| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK | **JURY DEMANDED** |

-----------------------------------------------X
SHALOM S. MAIDENBAUM,

        Plaintiff,                              Case No. 23 Civ. 3039 (KAM) (ARL)

  - against -

SEYMOUR H. MARCUS aka
SY H. MARCUS and ELLEN REA
MARCUS,
                Defendants.             **AMENDED COMPLAINT**
-----------------------------------------------X

       Plaintiff Shalom S. Maidenbaum, by his attorneys, Berry Law PLLC and the Law Offices of Elliot J. Blumenthal, PLLC, for his Complaint, alleges as follows:

### PARTIES

1. Plaintiff Shalom S. Maidenbaum resides in Lawrence, New York.

2. Defendant Seymour H. Marcus aka Sy H. Marcus ("Sy Marcus") resides in Brookline, Massachusetts or Boyton Beach, Florida.

3. Defendant Ellen Rea Marcus ("Ellen Marcus") resides in Brookline, Massachusetts or Boyton Beach, Florida. Sy Marcus and Ellen Marcus are married.

### NATURE OF THE ACTION

4. In this case based on the Court's diversity jurisdiction, Maidenbaum alleges that Sy and Ellen Marcus tortiously interfered with his effort to collect judgments entered in his favor and against judgment debtors Aaron Fischman, Cardis Enterprises International, B.V., Cardis Enterprises International, N.V., Cardis Enterprises International (USA), Inc. These judgments are entirely unpaid, and the total amount due, including interest under CPLR 5003, as of the filing date of this complaint is $4,734,457.92. Tortious interference with a judgment

creditor's collection efforts is long-recognized common law tort in New York. *James v. Powell*, 25 A.D.2d 1, 2, 266 N.Y.S.2d 245, 247 (1st Dept. 1966), *rev'd on other grounds*, 19 N.Y.2d 249, 279 N.Y.S.2d 10 (1967); *Ritter v. Klisivitch*, 2008 WL 2967627, *14 (E.D.N.Y., July 30, 2008) (citing *James*).

## JURISDICTION AND VENUE

5. Maidenbaum is a citizen, resident and domiciliary of New York. Maidenbaum is not a citizen, resident or domiciliary of either Massachusetts or Florida.

6. Sy Marcus is a citizen, resident and domiciliary of either Massachusetts or Florida. Sy Marcus is not a citizen, resident or domiciliary of New York.

7. Ellen Marcus is a citizen, resident and domiciliary of either Massachusetts or Florida. Ellen Marcus is not a citizen, resident or domiciliary of New York.

8. Federal subject matter exists pursuant to 28 U.S.C. 1332(a)(1) based on complete diversity of adverse parties, and since the value of Maidenbaum's claim in this action, exclusive of interest and costs, exceeds $75,000.

9. Sy Marcus and Ellen Marcus are subject to the *in personam* jurisdiction of this Court because the lawsuit arises out of their transacting of business and/or tortious acts with a nexus to New York state as contemplated by New York's long-arm statute, CPLR 301 and CPLR 302(a), subsections 1, 2 and 3. In particular:

(a) During a period beginning in 2018 and continuing through the 2022, Sy Marcus, through entities he controlled and/or beneficially owned, acquired from Aaron Fischman ("Fischman"), common stock in Ultimax Digital, Inc. *fka* Ultimas, Inc. ("Ultimax"). The entities through which Marcus acquired these shares include: Level Up Revocable Trust, Copper Trust,

2

SMB Trust, Symar Irrevocable Trust, Jomar Irrevocable Trust and Pamar Irrevocable Trust. Sy Marcus' agreements to acquire beneficial ownership of these Ultimax shares from Fishman were made by means of communications with Fischman, a New York resident, at a time when Fischman was physically present in New York and situated within this judicial District. These communications were sent and delivered into and out of New York by means of interstate facilities, including telephone and email services. At times when Fischman was physically situated in New York and within this judicial District, he executed the necessary documents and took other steps to transfer Ultimax shares to the trusts that Marcus controlled or beneficially owned.

(b) Sy Marcus agreed to pay fees for legal services provided by a New York law firm, Kasowitz, Benson & Torres, LLP, in defense of a criminal case prosecuted against Fischman, *i.e.*, *People v. Fischman*, Indictment No. 636N-2020 (Sup. Ct., Crim. Term, Nassau Co.) Sy Marcus' agreement to pay Kasowitz's fees was negotiated among Sy Marcus, Kasowitz and Fischman by means of interstate facilities, including telephone and email, and was finalized on July 8, 2021. Kasowitz and Fischman were New York residents and physically situated in New York, and Fischman was situated within this judicial District, during these negotiations. Sy Marcus signed the agreement on July 21, 2021 and, that same day, by means of interstate communication facilities, delivered the signed agreement to Kasowitz and Fischman. Both Kasowitz and Fischman were within the state of New York, and Fischman also within this judicial District when they received the signed agreement back from Sy Marcus. Alternatively, Marcus countersigned the Kasowitz fee agreement when he was physically present in New York since, just two days later on July 23, 2021, Marcus and Maidenbaum met in Cedarhurst (Long

Island) concerning Maidenbaum's dispute with Fischman.

(c) By means of wire transfers made on June 7, 2022 (in the amount of $125,000); July 7, 2022 (in the amount of $105,000) and July 27, 2022 (in the amount of $200,000), Sy Marcus paid outstanding attorneys fees incurred for legal services provided to Fischman by Kasowitz. These wire transfers were delivered to Kasowitz within New York state by means of interstate payment facilities and received into Kasowitz' account at a Citibank branch in Manhattan.

(d) Ellen Marcus made, participated in and assisted the June 7, 2022, July 7, 2022 and July 27, 2022 payments to Kasowitz, by ordering wire transfers out of a so-called "house account" for the Marcus family businesses.

(e) Sy Marcus is an insurance agent, broker and salesperson, and a financial advisor, who is present and doing business in New York. Sy Marcus derives, and expects to derive, substantial revenue from interstate commerce and from New York resident clients and customers. Marcus routinely offers to sell insurance and other financial products to New York residents and solicits and receives payments from his existing and prospective New York resident clients and customers using interstate communications and banking facilities.

- and -

(g) Sy and Ellen Marcus knew and reasonably expected that their activities in concert with Fischman and Kasowitz would have consequences within New York.

10. Venue is proper under 28 U.S. Code §1391(b) since this action arises out events which occurred within this District.

## FACTS

### A. Maidenbaum's Judgments

11. Maidenbaum is a judgment creditor of Cardis Enterprises International B.V., Cardis Enterprises International N.V., Cardis Enterprises International (USA) Inc. and Aaron Fischman. The judgments, which were filed in the office of the Nassau County Clerk, are:

> (A) *Maidenbaum v. Cardis Enterprises International*, *B.V., et al.*, Index No. 604610/2016 in the principal amount of $2,576,446.78 jointly and severally against Cardis B.V., Cardis N.V., Cardis USA, Choshen Israel, LLC ("Choshen") and Aaron Fischman, entered on June 21, 2016.

> - and -

> (B) *Maidenbaum v. Cardis Enterprises International*, *B.V., et al.*, Index No. 604766/2016 in the principal amount of $355,542.98 jointly and severally against Cardis B.V., Cardis N.V., Cardis USA, Choshen and Fischman, entered on June 28, 2016.

The Cardis entities operated as a single enterprise without regard to formal or corporate distinctions and will be collectively referred to as "Cardis."

12. Including post-judgment (CPLR 5003) interest, the amount due under the judgment as of the filing of this complaint is $4,734,457.92. Each judgment is based on the failure to pay a promissory note. Both notes were made on February 23, 2015 by Cardis, Choshen and Fischman, one evidencing a $2 million debt to Maidenbaum and the other a $275,000 debt to Maidenbaum. Neither note was paid upon maturity and Maidenbaum obtained the judgments by confession.

### B. Cardis and Fischman

13. Cardis was founded by Aaron Fischman. Cardis was promoted as an investment opportunity by Fischman based on claims that it owned highly valuable developmental stage credit card processing technology that also had potential applications for cryptocurrency

5

transactions. In consideration for capital contributions, Cardis' investors were allocated shares of Cardis common stock.

**C. The Secreting of Cardis' and Fischman's Assets**

14. A substantial amount of Cardis' receipts were paid into accounts in the name of Lawrence Katz, Esq., an attorney for Cardis. However, instead of forwarding all that money to Cardis, Katz diverted a portion of it to Fischman's wife, Nina, and other individuals, businesses or charities affiliated with Fischman.

15. Executive compensation payable by Cardis to Fischman was diverted to his Aaron's wife, Nina, and then to a trust that Nina controlled.

16. The diversions of Cardis' receipts and Aaron's compensation, and numerous fraudulent conveyances by Cardis and Aaron, prevented Maidenbaum from collecting any portion of his judgment.

17. Besides Maidenbaum, many other investors were defrauded by Fischman and Cardis. Cardis and Fischman were sued by several groups of defrauded investors who alleged either securities fraud in connection with the solicitation of their investments and/or Fischman's misappropriation of their capital contributions to Cardis.[1]

18. Fischman's fraudulent activities in connection with Cardis led to his indictment by the New York Attorney General in 2020 on charges of securities fraud, grand larceny, money laundering and conspiracy in the *People v. Fischman*, *supra*. (Fast-forwarding, in 2022,

---

[1] *E.g.*, *Stern v. Cardis Enterprises International, N.V.*, Case No. 15 Civ. 05869 (E.D.N.Y.); *Weinstein v. Cardis Enterprises International, N.V.*, Case No. 16 Civ. 02661 (E.D.N.Y.); *Honig v. Cardis Enterprises International N.V.*, Case No. 14 Civ. 07548 (E.D.N.Y.); *Etgar v. Cardis Enterprises International, N.V.*, Case No. 17 Civ. 00978 (E.D.N.Y.).

Fischman pled guilty to criminal violations of General Business Law §352-c(5), a securities law statute.)

**D. <u>Ultimax</u>**

19. In 2018, as Maidenbaum continued his collection efforts and Fischman and Cardis were defending lawsuits by other Cardis investors, Fischman founded a new company called Ultimas, Inc., which was later renamed Ultimax Digital, Inc. ("Ultimax," as defined above.) Originally, Fischman was the sole or controlling shareholder in Ultimax.

20. Fischman took steps to transfer Cardis' intellectual property rights and developmental technology to Ultimax. Immediately after Ultimax's formation, Cardis licensed to Ultimax a source code (the "Source Code") that was critical to the technology Cardis had intended to develop. Ultimax also hired a software engineer named Miki Radivojsa and Radivojsa's consulting firm, Airos Group, Inc., as consultants. Radivojsa and Airos had previously worked for Cardis as independent contractors. Radivojsa had a unique understanding of the Source Code and his services were required to develop and monetize applications utilizing the Source Code. Ultimax paid Airos $205,620.31 between May 2018 and February 2020.

**E. <u>Maidenbaum's Unsuccessful Efforts to Restrain and
   Execute and Levy Upon Fischman's Personal Property</u>**

21. Cardis' and Fischman's secreting of their assets, and their post-judgment fraudulent conveyances, prevented Maidenbaum from collecting any portion of his judgments even though Maidenbaum has served numerous restraining notices pursuant to CPLR 5222 on banks and brokerages where Fischman is known to have maintained accounts.

22. Fischman's shares of Ultimax common stock are personal property subject to execution in satisfaction of Maidenbaum's judgment pursuant to CPLR 5232(a). In

supplementary (post-judgment) discovery proceedings, Maidenbaum issued subpoenas to Fischman, Ultimax and Ultimax's CEO, Jesse Sutton, as part of his effort to locate, restrain, and levy on Fischman's shares in Ultimax and identify appropriate garnishees for those shares. Between 2018 and 2022, Maidenbaum obtained several orders requiring Fischman, Ultimax and Sutton comply with the subpoenas and, in the case of Fischman, multiple orders holding him in contempt for non-compliance. However, neither Fischman, Ultimax or Sutton complied with Maidenbaum's subpoenas. As a result, Maidenbaum has not been able to levy on the Fischman's Ultimax stock, identify possible garnishees or locate physical share certificates.

23. Maidenbaum has failed to collect any portion of the judgment despite having delivered writs of execution to the Nassau County Sheriff and the New York City Marshall.

24. As a result of various fraudulent schemes, Maidenbaum failed to collect any portion of the judgment despite delivering writs of execution to the Nassau County Sheriff that specifically sought to levy on Fischman's shares and interests in Ultimax.

**F. The Diversion of Fischman's Ultimax Stock to Trusts
   Controlled by the Marcuses and the Diversion of the
   Proceeds Derived from the Sale of that Stock To Kasowitz**

25. Were Fischman to exchange his Ultimax stock for cash, those payments would have to be deposited in a bank accounts which would be subject to restraining notices served by Maidenbaum pursuant to CPLR 5222 and subject to execution and levy pursuant to CPLR 5232(a). Fischman needed to avoid depositing cash in restrainable accounts to continue evade Maidenbaum's collection efforts.

26. To continue to evade Maidenbaum's collection efforts, Fischman pursued a scheme that involved transferring his Ultimax stock to various individuals or entities in consideration for

either:

(a) Cash deposits that these individual and entities made into to new accounts that Fischman had opened; accounts that Maidenbaum didn't know about; accounts that the bank had previously declined to restrain because they had only minimal balances at the time the CPLR 5222 notice was served[2]; or accounts in the name of Fischman's wife, Nina, but which Fischman actually controlled.

(b) Past or future legal services by attorneys—including Levi Huebner and Steven LaBarbera—in defense of Maidenbaum's collection efforts.

- and -

(c) Payments made to his attorneys by the titular and/or beneficial transferees of his Ultimax shares.

27. As part of the scheme, Fischman transferred a portion of his Ultimax shares to the following entities over which Sy and/or Ellen Marcus exercised *de facto* control: Level Up Revocable Trust, Copper Trust, SMB Trust, Symar Irrevocable Trust, Jomar Irrevocable Trust and Pamar Irrevocable Trust.

28. Sy Marcus was the controlling principal of Level Up Revocable Trust, Copper Trust and SMB Trust at the time those trusts received Ultimax shares from Fischman.

29. Sy and Ellen Marcus had actual and *de facto* control over the Symar, Jomar and Paymar Irrevocable Trusts when those trusts received transfers of Fischman's Ultimax stock, as evidenced by the following, all of which is established by Ultimax's Form S-1 filing and Amended S-1 filings with the SEC between September 22, 2022 and early 2023.

---

[2] *See* CPLR 5205(l)

(a) Sy Marcus was the designated beneficiary of the Symar Irrevocable Trust.

(b) Their son, Jonathan, was the designated beneficiary of the Jomar Irrevocable Trust.

(c) Their son, Paul, was the beneficiary of the Pamar Irrevocable Trust.

(c) Jonathan's father-in-law, Hyman Stramer, was the designated trustee and controlling principal of the Symar, Jomar and Pamar Irrevocable Trusts. According to Ultimax's SEC filings, Symar, Jomar and Pamar became shareholders in Ultimax by no later than September 20, 2022.

30. In consideration for Fischman's transfers of Ultimax stock to entities that were actually and beneficially controlled by Sy and Ellen Marcus, Sy Marcus agreed in a contract, which was dated July 7, 2021 and fully executed on July 21, 2021, to pay the legal fees incurred by Fischman for services provided by Kasowitz in defending the *People v. Fischman* criminal case.

31. In that fashion, Sy and Ellen Marcus participated in Fischman's obtaining consideration for his Ultimax stock in a form—legal services provided to Fischman by Kasowitz—that Maidenbaum could not execute upon.

32. Later, the fee agreement between Marcus and Kasowitz was informally expanded to provide that Marcus would also pay Kasowitz for other legal work rendered to Fischman, including legal research and strategic advice that supported litigation services that Levi Huebner provided to Fischman in opposition to Maidenbaum's collection efforts.

33. Sy and Ellen Marcus made at least three direct payments totaling $430,000 to Kasowitz to defray the fees incurred in Fischman's criminal defense. Specifically, $125,000 was paid on June 7, 2022; $105,000 was paid on July 7, 2022; and $200,000 was paid on July 27,

2022. At the time, Sy and Ellen Marcus had known about Maidenbaum's judgment for at least a year. .

34. As noted above, on September 20, 2022, with two months following the last payment Trusts benefitting the Marcuses' children, and nominally controlled by their in-law, Hyman Stramer because shareholders in Ultimax, the company that Fischman founded. According to Ultimax's SEC filings, Levelup, Symar, Pamar and Jomar – which were all affiliated with the Marcus family – were part of a group of shareholders that controlled Ultimax pursuant to a voting rights agreement  At that time, Ultimax was planning an initial public offering and it is fair to assume that the allocation of Ultimax stock to these trusts was in consideration for the Marcuses' payment of the legal fees to Kaswotiz on Fischman's behalf.

35. Ellen Marcus made, participated in and facilitated the June 7, 2022, July 7, 2022 and July 27, 2022 payments to Kasowitz by ordering wire transfers out of a so-called "house account" for the Marcus family businesses to Kasowitz. That is indicated by the Credit Advises received by Kasowitz from Citibank corresponding to these payments, each of which states: "Transfer Requested by Ellen Rea Marcus."

36. Sy and Ellen Marcus were fully aware that they were helping Fischman evade Maidenbaum's judgment collection efforts by paying Kasowitz for services provided to Fischman. Beginning on February 17, 2022, a portion of the invoices Sy Marcus received from Kasowitz identified its engagement as "Frozen accounts-Preliminary Assessment." That was a reference to a securities account for a Fischman family trust that Merrill Lynch froze pursuant to a

restraining notice served by Maidenbaum.[3] (Other invoices continued to refer to the *People v. Fischman* criminal case.) On July 23, 2021, Sy Marcus met with Maidenbaum and Maidenbaum's lawyers in Cedarhurst, Long Island. At that meeting, Maidenbaum's judgments were discussed, and Maidenbaum and his lawyers described Fischman's securities frauds and misappropriations in detail, and showed Marcus documentary proof of the misappropriations. At the meeting, Sy Marcus acknowledged that he had known about Maidenbaum's judgments against Fischman for several years. Sy Marcus nevertheless proceeded with the scheme to pay Kasowitz's fees in exchange for beneficial control of Fischman's stock in Ultimax, thereby revealing his actual malice toward Maidenbaum.

37. In addition to the total of $430,000 wired by Sy and Ellen Marcus to Kasowitz, the firm received an additional $1,089,933.52 in payments made on Fischman's behalf from mid-2021 through early 2023 that cannot be traced because it was paid, in part, by bank checks that do not identifier the drawer and, in part, funneled through an attorney IOLA account. On information and belief—based primarily but not exclusively on Sy Marcus' status as the sole person contractually obligated to pay fees that Kasowitz incurred on Fischman's behalf—Sy and Ellen Marcus are also the source of the other as-yet-untraceable $1,089,933.52 in payments.

38. As a result of the scheme concocted by Fischman and the Marcuses, Maidenbaum has not been able to execute on his judgment.

39. As a result of the scheme concocted by Fischman and the Marcuses, Maidenbaum incurred in excess of $500,000 in attorneys fees in futile efforts to execute on Fischman's

---

[3]Maidenbaum's petition pursuant CPLR 5225(b) and CPLR 5227 for the turnover of the frozen Merrill Lynch money is *sub judice*. Even if the petition is granted, the unsatisfied portion of Fischman's judgment debt will still be in the amount of approximately $3 million.

personal property, including his Ultimax common stock.

## CLAIMS FOR RELIEF

### First Claim:

### Tortious Interference with Enforcement of a Judgment
### (against Sy Marcus and Ellen Marcus)

40. Paragraphs 1 through 39 are repeated and realleged as if set forth fully herein.

41. At all relevant times, Sy and Ellen Marcus knew that Fischman owed a judgment debt to Maidenbaum.

42. Sy and Ellen Marcus engaged in concerted activity with Fischman that assisted, and was specifically intended to assist, Fischman in evading Maidenbaum's judgment enforcement efforts.

43. At all relevant times, Sy and Ellen Marcus had specific knowledge of Maidenbaum's unsatisfied judgments against Fischman.

44. Sy and Ellen Marcus were the actual beneficiaries and exercised either legal or *de facto* control over the trusts that received the Ultimax shares in consideration for their payments to Kasowitz, including Level Up Revocable Trust, Copper Trust, SMB Trust, Symar Irrevocable Trust, Jomar Irrevocable Trust and Pamar Irrevocable Trust.

45. Sy and Ellen Marcus are beneficiaries of transfers of Fischman's assets—specifically, his shares of Ultimax common stock—that were transferred to trusts that they actually controlled.

46. The consideration Sy and Ellen Marcus received in consideration for the payments they made on Fischman's behalf to Kasowitz was common stock in Ultimax that Fischman transferred to trusts designated by the Marcuses.

47. Sy and Ellen Marcus interfered by improper means with the execution of

Maidenbaum's judgments against Fischman.

48. As a result of Fischman's and the Marcuses' scheme, Fischman's Ultimax shares were exchanged for an asset—*i.e.*, legal services provided by Kasowitz and the right to continued legal services provided by Kasowitz—that Maidenbaum could not execute upon.

49. Sy and Ellen Marcus arranged to divert the proceeds of Fischman's sales of his Ultimax stock to Kasowitz in a matter that insulated that asset from Maidenbaum's efforts to execute and levy upon it.

50. Even if Maidenbaum succeeds in setting aside Fischman's and Cardis' fraudulent conveyances he will not be made whole given the attorneys fees he incurred for collection efforts that were rendered futile by the scheme concocted by Fischman and the Marcuses.

51. Maidenbaum suffered loss and expense caused by the Marcuses' tortious interference with the collectibility of their judgment.

52. Sy and Ellen Marcus acted with actual malice toward Maidenbaum in assisting Fischman in evading Maidenbaum's judgment collection efforts.

53. Maidenbaum has been damaged in his business and property by the Marcuses' tortious interference with the collectibility of his judgments.

**Second Claim**:

**Aiding and Abetting a Fraudulent Conveyance
and Conspiracy to Defraud**
**(against Sy Marcus)**

54. Paragraphs 1 through 53 are repeated and realleged as if set forth fully herein.

55. Sy Marcus is a recipient of transfers from Maidenbaum's judgment debtor, namely, Aaron Fischman, since Trusts' controlled by Marcus and for which were Marcus's alter ego

14

received (a) Ultimax stock from Fischman and/or (b) a portion of Fischman's ownership interest in Ultimax.

56. On or about July 7, 2021 and on July 21, 2021, as part of a scheme to defraud Maidenbaum by preventing him from executing on the judgment debt owed to him by Fischman, Marcus agreed to pay to pay the legal fees that Kasowitz would incur in its representation of Fischman, in exchange for Fischman transferring to Marcus (a) Ultimax stock that Fischman owned and/or (b) a portion of Fischman's ownership interest in Ultimax. This agreement would benefit Fischman in two ways. First, it transferred his personal property—his Ultimax stock and/or ownership interests in Ultimax—to Marcus, thereby preventing Maidenbaum from executing on that personal property. Second, it avoided Fischman receiving payment for the Ultimax stock and/or the Ultimax ownership interest in cash, thereby precluding Maidenbaum from collecting that cash by restraining and executing upon Fischman's bank accounts.

57. Fischman and Marcus successfully implemented their scheme, thereby depriving Maidenbaum of his right to execute upon Fischman's personal property

58. Marcus participated in Fischman's scheme to "hinder, delay and/or defraud" Maidenbaum within the meaning of New York Debtor & Creditor Law §273(a)(1).

59. Marcus received beneficial ownership of Fischman's Ultimax stock and/or ownership interest in Ultimax as a result of his "actual intent to hinder, delay or transfer" Maidenbaum's judgment collection efforts within the mean of DCL §273(a)(1).

60. Fischman and Marcus connived to make these transfers with the intent and object of depriving Maidenbaum of the opportunity to issue execution against Fischman's property.

61. Marcus was at all times aware that Fischman was attempting to defraud Maidenbaum

by having Marcus pay Fischman's attorneys fees in exchange for Ultimax stock and/or ownership interests in Ultimax.

62. Paying another person's attorneys fees in exchange for stock transfers from that other person is not a normal or typical business practice or means of investing in a company.

63. Maidenbaum has been injured in his business and property by the substantial assistance that Marcus provided Fischman in avoiding Maidenbaum's judgment collection efforts.

WHEREFORE, Maidenbaum demands judgment as follows:

1. Compensatory damages in an amount to be determined at trial but in any event no less than $930,000.

2. Punitive damages in an amount to be determined at trial but in any event no less that $2 million.

- and -

3. Interest, costs, taxable disbursements and attorney fees as permitted by law.

## JURY DEMAND

Maidenbaum requests a jury on all issues so triable.

Dated: New York, New York
July 17, 2023

Berry Law PLLC
/s/Eric W. Berry
By: _____
Eric W. Berry [EB 8598]
745 Fifth Avenue, 5th Floor
New York, New York   10151
(212) 355-0777
berrylawpllc@gmail.com

Law Offices of Elliot J. Blumenthal, PLLC
/s/Elliot J. Blumenthal
By: _____
Elliot J. Blumenthal [EB 3438]
483 Chestnut Street
Cedarhurst, New York 11516
(516) 295-0903
elliot@eblumenthallaw.com

*Attorneys for plaintiff Shalom S. Maidenbaum*