UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------X

SHALOM S. MAIDENBAUM,

                *Plaintiff*,

  - against -

SEYMOUR H. MARCUS A.K.A.
SY H. MARCUS, ELLEN REA MARCUS,

              *Defendants*.

------------------------------------X

**MEMORANDUM & ORDER**

No. 23-cv-3039 (KAM)(ARL)

**KIYO A. MATSUMOTO, United States District Judge:**

      Plaintiff Shalom S. Maidenbaum ("Plaintiff") commenced the instant diversity action against Defendants Seymour H. Marcus ("Sy Marcus") and Ellen Rea Marcus ("Ellen Marcus") (collectively, "Defendants"), alleging tortious interference with enforcement of a judgment ("Count One"), and aiding and abetting a fraudulent conveyance and conspiracy to defraud ("Count Two"). (ECF No. 14, Amended Complaint ("Am. Compl.") ¶¶ 40-63.) Presently before the Court is Defendants' motion to dismiss under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), or, in the alternative, judgment on the pleadings under Federal Rule of Civil Procedure 12(c) (ECF No. 65, "Mot."). Defendants argue that (1) the Court lacks subject-matter jurisdiction, (2) the Court lacks personal jurisdiction, and (3) Plaintiff has failed to state a claim upon which relief may be granted.

For the reasons herein, the Court concludes that: (1) the Court has subject-matter jurisdiction over Plaintiff's claims, (2) the Court may exercise personal jurisdiction based on Defendants' contacts and actions in New York, and (3) Plaintiff has alleged sufficient facts to state a claim as to Count One, but fails to state a claim as to his aiding and abetting fraudulent conveyance claim in Count Two. Accordingly, Defendants' motion to dismiss is DENIED in part and GRANTED in part. Plaintiff is GRANTED thirty (30) days from the entry of this Memorandum and Order to amend his fraudulent conveyance claims.

## BACKGROUND

The Court accepts the allegations in Plaintiff's Amended Complaint as true for the purpose of resolving Defendants' motion to dismiss under Rule 12(b)(6). *J.S. ex rel N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).

### I.    Factual Background

Plaintiff, Shalom S. Maidenbaum, is a New York resident seeking to collect judgments entered in his favor against judgment debtors Aaron Fischman ("Fischman"), Cardis Enterprises International, B.V., Cardis Enterprises International, N.V., Cardis Enterprises International (USA), Inc, and Choshen Israel, LLC (collectively "Judgment Debtors," or excluding Fischman, "Cardis"). (Am. Compl. ¶¶ 1, 4, 11.) Fischman was a New York resident at the time of the events alleged in the Amended

2

Complaint.  (*Id.* ¶ 9(b).)

Cardis, founded by Fischman, was promoted as an investment opportunity based on claims that it owned highly valuable developmental stage credit card processing technology with potential applications for cryptocurrency transactions.  (*Id.* ¶ 13.)  Substantial amounts of Cardis' receipts were paid to accounts in the name of Lawrence Katz, Esq. ("Katz"), an attorney for Cardis.  (*Id.* ¶ 14.)  Instead of forwarding all amounts to Cardis, Katz would divert portions of the funds to Fischman's wife, Nina Fischman, and other individuals, businesses or charities associated with Fischman.  (*Id.*)  Fischman also diverted portions of his executive compensation to his wife, and then to a trust controlled by his wife.  (*Id.* ¶ 15.)

Plaintiff and other investors sued Fischman and Cardis alleging securities fraud in connection with the solicitation of their investments and Fischman's misappropriation of their capital contributions to Cardis.[1]  (*Id.* ¶ 17.)  On February 23, 2015, Plaintiff obtained two promissory notes from Cardis, Chosen and Fischman in the amounts of $2,000,000 and $275,000.  (*Id.* ¶ 12.)  Neither note was paid upon maturity.  (*Id.*)  In June 2016, Plaintiff sought and obtained two judgments by confession against

---

[1] Fischman's fraudulent activities in connection with Cardis led to his indictment in 2020 on charges of securities fraud, grand larceny, money laundering and conspiracy.  (Am. Compl. ¶ 18.)  Fischman pled guilty to criminal violations of General Business Law § 352-c(5) in 2022.  (*Id.*)

Cardis, Chosen and Fischman in the amounts $2,576,446.78 and $355,542.98 ("State Court Judgments"). (*Id.* ¶ 11.) The total amount due at the filing of the Amended Complaint, including post-judgment interest from the State Court Judgments, is $4,734,457.92. (*Id.* ¶ 12.) Plaintiff alleges that the diversions of Cardis' receipts and Fischman's compensation, as well as other fraudulent conveyances, prevented Plaintiff from collecting any portion of his judgment. (*Id.* ¶ 16.)

In 2018, during Plaintiff's collection efforts, Fischman founded a new company named Ultimas, Inc., which was later renamed to Ultimax Digital, Inc. ("Ultimax"). (*Id.* ¶ 19.) Fischman was originally the sole or controlling shareholder in Ultimax. (*Id.*) Immediately after Ultimax's formation, Fischman took steps to transfer Cardis' intellectual property rights and developmental technology to Ultimax. (*Id.* ¶ 20.) Specifically, Cardis licensed to Ultimax a source code (the "Source Code") that was critical to the technology that Cardis had intended to develop. (*Id.*) Ultimax also hired software engineers and consultants who had previously worked for Cardis, and possessed unique understandings of the Source Code. (*Id.*)

Plaintiff issued subpoenas to Fischman, Ultimax, and Ultimax's Chief Executive Officer, Jesse Sutton ("Sutton"), as part of his effort to locate, restrain, and levy on Fischman's shares in Ultimax and identify appropriate garnishees for those

shares. (*Id*. ¶ 22.) Despite Plaintiff obtaining several court orders between 2018 to 2022 directing compliance with Plaintiff's subpoenas, neither Fischman, Ultimax nor Sutton complied with the subpoenas. (*Id.*) As a result, Plaintiff was unable to collect any portion of his judgment. (*Id.*)

To continue to frustrate Plaintiff's collection efforts, Fischman engaged in various schemes that involved transferring his Ultimax stock to various individuals or entities in exchange for either: (1) cash deposits to various bank accounts out of Plaintiff's reach, such as bank accounts that Plaintiff did not know about, bank accounts previously unrestrained because of its minimal balances at the time of the CPLR § 5222 notice, and bank accounts in the name of Fischman's wife, but controlled by Fischman, (2) past or future legal services by attorneys in defense of Plaintiff's collection efforts, or (3) payments to attorneys. (*Id*. ¶ 26.)

Defendants, Seymour "Sy" Marcus and Ellen Marcus, are husband and wife and citizens of either Massachusetts or Florida. (*Id*. ¶¶ 3, 6, 7.) Plaintiff alleges that, as part of Fischman's scheme to frustrate Plaintiff's attempts at collection, Fischman transferred a portion of his Ultimax shares to entities over which Defendants exercised *de facto* control in exchange for consideration in the form of cash deposits into accounts, payment of past or future legal services, which Plaintiff could not execute upon. (*Id*. ¶¶

27, 30.)  Defendants' entities included the Level Up Revocable Trust, Copper Trust, SMB Trust, Symar Irrevocable Trust, Jomar Irrevocable Trust and Pamar Irrevocable Trust. (*Id.* ¶ 28.)

In consideration for Fischman's transfers of Ultimax stock to Defendants' entities, Sy Marcus agreed with law firm Kasowitz Benson Torres LLP ("Kasowitz") in a contract executed on July 21, 2021, to pay Fischman's legal fees for services provided by Kasowitz in connection with Fischman's New York state criminal case. (*Id.* ¶ 30.)  Plaintiff alleges that this agreement between Kasowitz and Sy Marcus was later informally expanded to cover payments for other legal work rendered to Fischman, including legal work opposing Plaintiff's collection efforts.  (*Id.* ¶ 32.)

As part of Defendants' alleged scheme, Defendants made three direct payments to Kasowitz totaling $430,000 for Fischman's legal defense.  (*Id.* ¶ 33.)  Specifically, Defendants paid $125,000 to Kasowitz on June 7, 2022, $105,000 on July 7, 2022, and $200,000 on July 27, 2022.  (*Id.*)  Plaintiff alleges that Defendants made, participated, and facilitated these payments to Kasowitz by ordering wire transfers out of a so-called "house account" for the Defendants' family businesses.  (*Id.* ¶¶ 34, 35.)  In addition to the $430,000 of direct payments, Kasowitz also received an additional $1,089,933.52 in untraceable payments made on Fischman's behalf.  (*Id.* ¶ 37.)  As Defendants were contractually obligated to pay Fischman's legal fees with Kasowitz, Plaintiff

alleges that Defendants were also the source of the untraceable payments made to Kasowitz. (*Id.*)

Plaintiff further alleges that Defendants were fully aware that they were helping Fischman evade Plaintiff's judgment collection efforts. (*Id.* ¶ 33.) First, Plaintiff alleges that Defendants had received invoices from Kasowitz identifying its work as "Frozen accounts-Preliminary Assessment" – referencing a frozen Fischman family trust account pursuant to Plaintiff's restraining notice. (*Id.* ¶ 36.) Second, on July 23, 2021, Defendant Sy Marcus met with Plaintiff and Plaintiff's counsel in Cedarhurst, New York, and discussed Plaintiff's judgments against Fischman. (*Id.*) At this meeting, Marcus acknowledged that he had known about Plaintiff's judgments against Fischman for several years. (*Id.*)

Plaintiff alleges that, as a result of Defendants' scheme with Fischman, he has been unable to execute on his judgment and has incurred over $500,000 in attorneys' fees in his efforts to execute on Fischman's personal property, including Fischman's Ultimax common stock. (*Id.* ¶¶ 38, 39.)

## II.  Procedural Background

On July 17, 2023, Plaintiff filed the instant Amended Complaint, asserting claims of (1) tortious interference with enforcement of a judgment, and (2) aiding and abetting a fraudulent conveyance and conspiracy to defraud. (*Id.* ¶¶ 40-63.) Plaintiff

seeks compensatory damages in an amount no less than $930,000, punitive damages in an amount no less than $2,000,000, and interest, costs, and fees. (*Id.* at 16.)

On July 31, 2023, Defendants moved for a pre-motion conference to discuss its anticipated motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). (*See* ECF No. 15.) Plaintiff responded to Defendants' letter motion for a pre-motion conference on August 3, 2023. (*See* ECF No. 16.) On August 23, 2023, the Court held a pre-motion conference to discuss Defendants' anticipated motion to dismiss and directed the parties to engage in jurisdictional discovery regarding Defendants' contacts and actions in New York. (*See* Minute Entry dated August 23, 2023.) On August 20, 2024, Defendants' fully briefed motion to dismiss was filed with the Court. (*See* ECF Nos. 64, 65, 66, 67.) The Court now considers Defendants' motion to dismiss.

## LEGAL STANDARD

Defendants move to dismiss this action under Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, 12(b)(2) for lack of personal jurisdiction, and 12(b)(6) for failure to state a claim. In the alternative, Defendants move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). (Mot. at 1.)

### I.   Motion to Dismiss for Lack of Subject-Matter Jurisdiction

A motion to dismiss under Rule 12(b)(1) challenges the

court's subject-matter jurisdiction to adjudicate the action. *Brokamp v. James*, 66 F.4th 374, 386 (2d Cir. 2023). The plaintiff has the burden to establish subject-matter jurisdiction by a preponderance of the evidence. *Collins v. United States*, 996 F.3d 102, 108 (2d Cir. 2021). In resolving a motion under Rule 12(b)(1), the Court may consider affidavits or other materials beyond the pleadings. *Harty v. West Point Realty, Inc.*, 28 F.4th 435, 441 (2d Cir. 2022).

## II. Motion to Dismiss for Lack of Personal Jurisdiction

On a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), "the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *DiStefano v. Carozzi North America, Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (citation omitted). "[T]he showing a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it 'varies depending on the procedural posture of the litigation.'" *Dorchester Financial Securities, Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).

Before jurisdictional discovery, a plaintiff's *prima facie* showing of jurisdiction "may be established solely by allegations." *Ball*, 902 F.2d at 197. However, where jurisdictional discovery has been conducted, a plaintiff's *prima*

9

*facie* showing must be factually supported; that is, it must "include an averment of facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) (quoting *Ball*, 902 F.2d at 197). In assessing the plaintiff's showing, the court applies a "standard . . . akin to that on a motion for summary judgment," construing the "pleadings documents, and other evidentiary materials . . . in the light most favorable to the plaintiff and all doubts are resolved in [his or her] favor." *Melnick v. Adelson-Melnick*, 346 F. Supp. 2d 499, 503 (S.D.N.Y. 2004) (citations and internal quotation marks omitted).

### III. Motion to Dismiss for Failure to State a Claim

On a Rule 12(b)(6) motion to dismiss, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations in the complaint." *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 123 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). A complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In resolving a motion under Rule 12(b)(6), the Court must limit its

10

consideration to the complaint, documents incorporated by reference into the complaint, documents not incorporated but nonetheless integral to the complaint, and matters properly subject to judicial notice. *Clark v. Hanley*, 89 F.4th 78, 93 (2d Cir. 2023) (citing *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016)).

## IV.   Motion for Judgment on the Pleadings

Rule 12(c) provides that "[a]fter the pleadings are closed— but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Pleadings" include both the "complaint" and the "answer to [the] complaint." Fed. R. Civ. P. 7(a).

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (cleaned up). "To survive a Rule 12(c) motion, [the plaintiff's] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (cleaned up). "The assessment of whether a complaint's factual allegations plausibly give rise to an entitlement to relief . . . calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal conduct." *Lynch*, 952 F.3d at 75 (internal quotation marks

11

omitted).   In making this assessment, we "draw all reasonable inferences in [the plaintiff's] favor."   *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009).

## DISCUSSION

Defendants seek to dismiss this action based on lack of subject-matter jurisdiction, lack of personal jurisdiction, and Plaintiff's failure to state a claim upon which relief may be granted.   Each argument will be addressed in turn.

### I.   Subject Matter Jurisdiction

The Court first addresses subject-matter jurisdiction because the Court cannot proceed further with an action it has no power to adjudicate.   *See Coniglio v. Garland*, 556 F. Supp. 3d 187, 194 (E.D.N.Y. 2021).   Plaintiff invokes the Court's diversity jurisdiction under 28 U.S.C. § 1332.   (Am. Compl. ¶ 4.)   For the reasons below, the Court concludes that it has diversity jurisdiction over Plaintiff's claims.

Under the federal diversity statute, federal district courts have original subject-matter jurisdiction over civil actions between citizens of different states where the amount in controversy exceeds $75,000 excluding interest and costs.   *See* 28 U.S.C. § 1332(a)(1).   The parties must be completely diverse, meaning that no plaintiff may be a citizen of the same state as any defendant.   *See OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 217-18 (2d Cir. 2016).   For diversity purposes, an individual

person is a citizen of the state where he or she is "domiciled." *Van Buskirk v. United Group of Cos., Inc.*, 935 F.3d 49, 53-54 (2d Cir. 2019).

Plaintiff has alleged, and Defendants do not dispute, that the parties are completely diverse.  Plaintiff is a citizen of New York.  (Am. Compl. ¶ 1.)  Defendants Sy Marcus and Ellen Marcus are citizens of either Massachusetts or Florida, but in any event are not citizens of New York.  (*Id.* ¶¶ 2, 3.)  Thus, the Court concludes that because no plaintiff is a citizen of the same state as any defendant, the complete diversity requirement is met.

Defendants argue that, despite complete diversity, the Court still lacks subject matter jurisdiction because Plaintiff has not adequately pled the $75,000 amount-in-controversy requirement. (Mot. at 22-25.)  The Court disagrees.  A plaintiff has only a minimal burden to satisfy the federal diversity statute's amount-in-controversy requirement.  Courts presume that a plaintiff's good faith allegation about the amount in controversy controls unless it appears to a legal certainty that the plaintiff cannot recover that amount.  *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *accord Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 223 (2d Cir. 2017).

Here, though the Court does not, and need not, credit Plaintiff's bald assertion that "the value of [his] claims in this action, exclusive of interest and costs, exceeds $75,000[,]" (Am.

13

Compl. ¶ 8), the Court finds that Plaintiff's underlying factual allegations sufficiently allege an amount-in-controversy exceeding $75,000. Plaintiff alleges that, because of Defendants' actions, Plaintiff was unable to seize or execute on Fischman's assets in satisfaction of Plaintiff's two judgments of confession totaling $4,734,457.92. (*Id.* ¶ 4.) Moreover, Plaintiff alleges that Defendants have wired at least $430,000 to Kasowitz in satisfaction of Fischman's legal bills, thereby placing their assets out of Plaintiff's reach. (*Id.* ¶¶ 33, 37.)

Given these allegations, and assuming that Defendants' actions tortiously caused those losses, it does not appear to a legal certainty that Plaintiff could not recover $75,000 in this action. Thus, the Court has subject matter jurisdiction over the claims in this action under the federal diversity statute and will proceed to Defendants' other arguments.

## II. Personal Jurisdiction

Having established subject-matter jurisdiction, the Court now turns to Defendants' arguments regarding personal jurisdiction.

To ensure that the exercise of personal jurisdiction is proper, the district court must determine, first, whether there is a statutory basis for the exercise of such jurisdiction. *See Boyce v. Cycle Spectrum, Inc.*, 148 F. Supp. 3d 256, 263-64 (E.D.N.Y. 2015). In New York, there are two potential statutory bases for personal jurisdiction: (1) N.Y. C.P.L.R. § 301 provides the basis

14

for general personal jurisdiction, and (2) N.Y. C.P.L.R. § 302, New York's so-called Long-Arm Statute, provides the basis for specific jurisdiction. *See Boyce*, 148 F. Supp. 3d at 263-65. After determining whether a statutory basis exists for personal jurisdiction, a court must separately evaluate whether the exercise of personal jurisdiction comports with due process. *See Brown v. Lockheed Martin Corp.*, 814 F.2d 619, 625 (2d Cir. 2016).

Plaintiff focuses his argument in support of personal jurisdiction solely on the long-arm statute, C.P.L.R. § 302(a)(1). (*See* ECF No. 66, "Opp." at 3-5.)  Thus, the Court does not address the other subdivisions of C.P.L.R. §§ 301 and 302.  As detailed below, the Court finds that Defendants are subject to personal jurisdiction in New York.

### A.   C.P.L.R. § 302(a)(1) – Transaction of Business or Contract to Supply Goods/Services in New York

Plaintiff asserts that Defendants are subject to personal jurisdiction under C.P.L.R. § 302(a)(1), which states that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state[.]"  C.P.L.R. § 302(a)(1).  The Court agrees.

There are two requirements under § 302(a)(1) for a court to exercise jurisdiction over a non-domiciliary defendant.  First, the defendant must have transacted business in New York.  As the

Second Circuit has instructed, "the overriding criterion necessary to establish a transaction of business [under § 302(a)(1)] is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 61 (2d Cir. 2012) (citing *Ehrenfeld v. Bin Mahfouz* ("*Licci I*"), 9 N.Y.3d 501, 508 (N.Y. 2007)). "To determine whether a party has 'transacted business' in New York, courts must look at the totality of circumstances concerning the party's interactions with, and activities within, the state." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 787 (2d Cir. 1999) (Sotomayor, J.).

The second requirement, known as the "nexus" prong of § 302(a)(1), holds that there must be an "articulable nexus" or "substantial relationship" between the plaintiff's claim and the defendant's transaction in New York. *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (quoting *Henderson v. INS*, 157 F.3d 106, 123 (2d Cir. 1998)). The nexus prong requires only a "relatedness . . . such that the latter is not completely unmoored from the former." *Licci v. Lebanese Canadian Bank, SAL* ("*Licci II*"), 984 N.E.2d 893, 900 (N.Y. 2012). This "relatively permissive" nexus is satisfied where "at least one element [of the plaintiff's claim] arises from the [defendant's] New York contacts." *Id.* at 900-01.

16

Upon a motion to dismiss for lack of personal jurisdiction, "[t]he facts alleged in the complaint and affidavits in opposition to such a motion to dismiss are deemed true and construed in the light most favorable to the plaintiff, and all doubts are to be resolved in favor of the plaintiff." *Fanelli v. Latman*, 202 A.D.3d 758, 759 (2d Dept. 2022). Here, the Amended Complaint alleges that Defendants, together with New York resident Fischman, executed a letter agreement with Kasowitz, a New York law firm, for Kasowitz to provide legal services in Fischman's New York criminal case. (Am. Compl. ¶¶ 30-31.) Defendant Sy Marcus later expanded the scope of Kasowitz's retention to cover legal work in opposition to Plaintiff's collection efforts. (*Id.* ¶ 32.) Defendant Ellen Marcus then sent three wire transfers directly to Kasowitz's New York bank account, which allegedly allowed Fischman to pay his legal bills without liquidating his Ultimax common stock. (*Id.* ¶¶ 33, 35.) Defendants also separately transferred at least $968,000 into a New York State Interest on Lawyer Account Fund ("IOLA") account associated with Fischman's other attorneys at Cohen, LaBarbera & Landrigan, LLP – a law firm based in Chester, New York.[2] (*Id.* ¶ 37; ECF No. 65, "Berry Decl." Exs. 2, 3, 4.[3])

---

[2] An Interest on Lawyer Account is a type of interest-bearing account used by New York lawyers to hold client funds. *See* N.Y. Senate, IOLA and Civil Legal Services FAQ (accessed February 19, 2025), https://www.nysenate.gov/iola-and-civil-legal-services-faq.

[3] On a motion to dismiss for lack of personal jurisdiction, the Court may also consider Plaintiff's "affidavits and supporting materials" in

From the amounts deposited in the Cohen IOLA account, $347,500 was transferred directly to Kasowitz in satisfaction of Fischman's fee obligations to that firm, and other sums were transferred directly to Fischman and to Aurora Equities I. (Berry Decl. Exs. 2, 3, 4, 5.)

Defendants' actions, as alleged in the Amended Complaint and in Plaintiff's declaration, more than suffice to establish personal jurisdiction over the Defendants. As New York courts have found, § 302(a)(1) is a "single act statute," where even "one transaction in New York is sufficient to invoke jurisdiction [under § 302(a)(1)] . . . so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claims asserted." *Deutsche Bank Secs., Inc. v. Montana Bd. of Invs.*, 850 N.E.2d 1140, 1143 (N.Y. 2006) (internal quotations and citations omitted). Defendants entered an agreement with New York lawyers for Fischman, for legal services in New York, and made not one, but multiple wire transfers directly to New York bank accounts, including a New York-specific IOLA account. These actions have allowed Defendants to avail themselves of New York's contract and banking protections, regulations and laws.

---

determining whether a *prima facie* showing of personal jurisdiction has been established. *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981).

Moreover, because Defendants' wire transfers are precisely what is at issue in this lawsuit, there is a substantial relationship between the transactions and Plaintiff's asserted claims. *See Al Rushaid v. Pictet & Cie*, 68 N.E.3d 1, 11–12 (N.Y. 2016) (concluding that the non-domiciliary's use of a correspondent bank "was precisely part of the defendant's design" to launder profits and that this was sufficient to "show the minimum level of relatedness" to plaintiff's claims); *see also Licci II*, 984 N.E.2d 893, 901 (finding a substantial relationship where defendants used New York accounts repeatedly "to move the necessary" money).

The nexus between Plaintiff's claims and Defendants' New York conduct is premised on more than just Defendants' wire transfers. As an element of his tortious interference and fraud claims, Plaintiff must show that Defendants had knowledge of Plaintiff's judgments against Fischman. *See Siegel v. Kontogiannis*, No. 15-cv-2856 (MKB)(JO), 2017 WL 9482101, at **4-5 (E.D.N.Y. Mar. 14, 2017) (finding a genuine dispute of material fact regarding defendants' knowledge of the underlying judgment precluding summary judgment on tortious interference claim); *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 651 F. Supp. 2d 155, 186 (S.D.N.Y. 2009) (finding knowledge of the fraud to be an element in a common law fraud claim). Plaintiff alleged that Defendants acquired that knowledge in several instances, including

19

during an in-person meeting with Plaintiff in Cedarhurst, New York. (Am. Compl. ¶ 36.)  Defendants argue that a "single meeting" in New York cannot establish personal jurisdiction.  (Mot. at 20.) Regardless of whether that particular meeting may establish jurisdiction alone, the Court agrees with Plaintiff that such a meeting may nevertheless be part of a culmination of conduct that collectively establishes personal jurisdiction over Defendants. (Opp. at 5.)  *See M. Fabrikant & Sons, Inc. v. Adrianne Kahn, Inc.*, 144 A.D.2d 264, 265-66 (1st Dept. 1988) (finding jurisdiction where defendant had a single meeting in New York followed by further business dealings outside the state).

Furthermore, Defendants had retained and paid Kasowitz, a New York law firm, for legal services rendered on behalf of Fischman not only in Fischman's New York criminal case, but also for services which potentially challenge Plaintiff's attempts to collect on the Fischman judgments.  (Am. Compl. ¶¶ 30, 32, 33.) This, too, serves as a nexus for long-arm jurisdiction.  *See Courtroom Tel. Network v. Focus Media*, 264 A.D.2d 351, 353 (1st Dept. 1999) (long-arm jurisdiction established where the defendant relied on agents "to perform commercial activities in New York for [their] benefit").

Defendants nevertheless argue that the Amended Complaint "does not assert an articulable nexus between the claims and the few activities Defendants allegedly conducted in New York."  (Mot.

20

at 19.)   As noted above, the Court disagrees.   Defendants themselves note that: (1) Defendants' trusts "acquired the Ultimax stock from Fischman when Fischman was in New York[,]" (2) "Defendants agreed to pay Fischman's legal fees owed to a non-party New York law firm[,] (3) "Sy [Marcus] paid Fischman's legal fees into the law firm account at a branch in Manhattan[,]" (4) "Ellen [Marcus] paid those same legal fees into a law firm account at a branch in Manhattan[,] and" (5) "Sy [Marcus] occasionally does unrelated business with New York clients." (Mot. at 19-20.) Such allegations sufficiently establish personal jurisdiction over Defendants.

In sum, based on the totality of the circumstances, the Court finds that Defendants have purposely availed themselves of the privilege of transacting within New York and are subject to personal jurisdiction pursuant to C.P.L.R. § 302(a)(1).[4]

**B.   Due Process**

Having found specific personal jurisdiction to be proper in

---

[4] Though Plaintiff does not argue in his opposition brief that N.Y. C.P.L.R. §§ 302(a)(2) and 302(a)(3) apply to confer personal jurisdiction on Defendants, Plaintiff cites to those subdivisions in his Amended Complaint. (Am. Compl. ¶ 9.)   In the interests of completeness, the Court has reviewed the applicability of §§ 302(a)(2) and 302(a)(3) and finds that the Amended Complaint and Plaintiff's declarations fail to allege that Defendants were either physically present in New York during the commission of the alleged tort, or derive "substantial" revenue from their dealings in New York. *See Bank Brussels Lambert*, 171 F.3d at 778-91.   Plaintiff has not even alleged that Ellen Marcus does business in New York at all.   Thus, Plaintiff fails to allege personal jurisdiction under §§ 302(a)(2) and 302(a)(3).

New York, the Court has little difficulty further concluding that the exercise of personal jurisdiction here comports with due process. *See International Shoe Co. v. Washington*, 326 U.S. 310 (1945) (finding that courts gain personal jurisdiction over a non-domiciliary only if that person has "certain minimum contacts [within the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'"); *Hanson v. Denckla*, 357 U.S. 235, 251, 253 (1958) (holding that "minimal contacts" arise where a person acts to avail himself purposefully of the privilege of conducting business within a state, thereby gaining the benefits and protection of its laws). Based on the facts alleged in the Amended Complaint and articulated above, the Court finds that Defendants have minimum contacts in New York such that the maintenance of the lawsuit would not offend traditional notions of fair play and substantial justice.

Once the plaintiff has made a threshold showing that the action arises from the defendant's contacts with the state, the defendant may nonetheless defeat jurisdiction by presenting "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Bank Brussels Lambert*, 305 F.3d 120, 129. Relevant considerations include: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating

the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Id.* As Defendants have not even addressed these considerations in their briefs, the Court is unpersuaded that this case is "the exceptional situation where exercise of jurisdiction is unreasonable even though minimum contacts are present." *Id.* at 130 (quotations omitted).

"Because the New York long-arm statute is more restrictive than the federal due process requirements, by virtue of satisfying the long-arm statute the minimum contacts and reasonableness requirements of due process have similarly been met." *Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 108 (S.D.N.Y. 2015). As the Second Circuit observed, it would be "rare" and "unusual" for a court to determine that the exercise of personal jurisdiction over a defendant was permitted by § 302(a)(1), but prohibited under principles of due process. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL* ("*Licci III*"), 732 F.3d 161, 170 (2d Cir. 2013). In accordance with these principles, and upon the factual allegations in Plaintiff's Amended Complaint, the Court concludes that the exercise of personal jurisdiction over Defendants in this action comports with due process, and therefore denies Defendants' motion to dismiss pursuant to Federal

Rule of Civil Procedure 12(b)(2).

## III. Failure to State a Claim

Defendants next argue that (1) Plaintiff's judgments on Fischman are invalid, (2) Plaintiff lacks a private right of action under N.Y. C.P.L.R. article 52, and (3) the Amended Complaint fails to state a claim for either of Plaintiff's causes of action. (Mot. at 4-13, 14-18, 25-26.) The Court will address each argument in turn.

### A.  Validity of the Judgments of Confession

Defendants argue that, *inter alia*, Plaintiff's judgments of confession by Cardis, Chosen and Fischman are invalid because the judgments allegedly omit material information and contradict other record evidence. (Mot. at 5-15.) Plaintiffs respond, asserting that the Marcus Defendants may not collaterally attack the judgments of confession by Cardis, Chosen and Fischman – in essence, state court judgments – in this federal court action. (Opp. at 6-8.) The Court finds that the doctrine of *res judicata* bars further review, and thus does not reach the parties' remaining arguments on the validity of the judgments of confession.[5]

---

[5] It is unclear whether the Marcus Defendants would have standing to collaterally attack judgments that they were neither parties to nor impacted by. *See Marino v. Ortiz*, 484 U.S. 301, 304 (1988) (per curiam) (noting that the "better practice" for nonparties affected by a certain judgment is to intervene in the action rather than to collaterally attack the judgment through a separate action). In any case, even assuming Defendants have standing here, their argument nonetheless fails for the reasons stated in this section.

Under New York law, confessions of judgments are treated like consent decrees, which are, in turn, treated the same as a final judgment after trial. *See Canfield v. Elmer E. Harris & Co.*, 170 N.E. 121 (N.Y. 1930) ("A judgment by confession stands in much the same position as one by stipulation or consent and is conclusive adjudication of all matters embraced in it and a bar to any subsequent action on the same claim."); *In re Madison 92nd Street Associates LLC*, 472 B.R. 189, 194 (Bankr. S.D.N.Y. 2012) ("Under New York law, a consent judgment has the same res judicata effect as a judgment on the merits."). A confession of judgment is therefore treated as any other judgment rendered by a state court, and federal courts are required to give state court judgments the same "preclusive effect it would be accorded by the rendering state." *In re Higgins*, 270 B.R. 147, 156 (Bankr. S.D.N.Y. 2001). Confessions of judgments, like Plaintiff's judgments against Fischman, are subject to direct challenge at the time of their entry. But after the time to challenge has expired or the challenge has been denied, the judgment is final under longstanding *res judicata* principles. *Id.*

As Plaintiff notes, Fischman had in fact challenged the confessions of judgments in favor of Plaintiff, in a separate, related state court action captioned: *Fischman v. Jonathan A. Stein and Shalom Maidenbaum*, Index No. 608120/2022 (Sup. Ct. Nassau Cnty.). (Opp. at 7; Berry Decl. Ex. 7.) In that case, the Nassau

County Supreme Court held that the confessions of judgment by Cardis, Chosen and Fischman were indeed valid and enforceable. (Berry Decl. Ex. 7 at 4.)  As a result, this Court is prohibited under the doctrine of *res judicata* from looking behind the judgments of confession to consider Defendants' arguments regarding validity.

### B.   N.Y. C.P.L.R. Article 52

Defendants then appear to argue that, as for Count One "involving a tort arising from a judgment," Plaintiff would not have a private right of action and would be limited to bringing an action under N.Y. C.P.L.R. article 52.  (Mot. at 25-26.)  Though Defendants describe this argument as one of subject-matter jurisdiction, and Plaintiff does not address this argument in his opposing brief, the Court construes this argument to be for failure to state a claim.

In support of their argument, Defendants cite *Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*, 183 N.E.3d 1185 (N.Y. 2021).  *Plymouth*, however, does not stand for Defendants' broad proposition that any action related to restraining notices issued under C.P.L.R. article 52 must be brought in the state court where the judgment is recorded.  (Mot. at 26.)  Rather, as the New York Court of Appeals stated in *Plymouth*, actions based on "alleged violations of the procedural requirements of article 52" must proceed within the mechanisms provided by article 52.  *Id*. at

1192.

Defendants' reliance on *Cruz v. TD Bank* is similarly misplaced.  (Mot. at 25.)  *Cruz* had made clear that "common-law tort claims" – such as Plaintiff's claims here – were "beyond the scope of the questions certified to [the Court of Appeals]." 2 N.E.3d 221, 225 (N.Y. 2013).  Consistent with *Plymouth*, *Cruz* held only that a plaintiff must sue for procedural violations of C.P.L.R. article 52 using the mechanisms provided within C.P.L.R. article 52.  *Id.* at 231.

Here, however, Plaintiff has not asserted claims against Defendants for procedural violations of C.P.L.R. article 52. Instead, Count One of Plaintiff's Amended Complaint asserts that Defendants, with knowledge of a pending judgment against Fischman, entered a tortious scheme to interfere with Plaintiff's ability to collect on a valid judgment.  (Am. Compl. ¶¶ 40-53.)  As Defendants themselves recognize, New York courts have long recognized a common-law cause of action for tortious interference with the enforcement of a judgment.  (*See* ECF No. 67, "Reply" at 4.); *Quinby v. Strauss*, 90 N.Y. 664, 1882 WL 14577 (N.Y. 1882); *James v. Powell*, 25 A.D.2d 1 (1st Dep't. 1966).  Thus, the Court finds that Plaintiff is not limited to bringing Count One under a C.P.L.R. article 52 proceeding.

### C.    Count One – Tortious Interference with Enforcement of Judgment

Defendants next argue that Plaintiff has failed to state a claim on Count One because (1) Defendants' alleged actions in paying for Fischman's legal fees in exchange for Ultimax stock is "neither fraudulent nor otherwise improper," and (2) Defendants' alleged actions were not the "but for" cause of Plaintiff's injury. (Mot. at 16; Reply at 4-9.) For the reasons stated below, the Court finds that Plaintiff has sufficiently stated a claim for tortious interference.

### 1.    Standard of Conduct Required for Tortious Interference Claims

As discussed above, New York courts have long recognized a cause of action for tortious interference with the enforcement of a judgment. *See Ritter v. Klisivitch*, No. 6-cv-5511, 2008 WL 2967627, at *14 (E.D.N.Y. July 30, 2008) (citing *James v. Powell*, 25 A.D.2d 1, 3-4 (1st Dept. 1966), *rev'd on other grounds*, 225 N.E.2d 741 (N.Y. 1967). "At common law, whoever by improper means interfered with the execution of a judgment was liable for the damage he caused to the judgment creditor." *James*, 25, A.D.2d at 2. "Although applicable case law has not explicitly defined all of the elements of such a claim, it does make clear that the [Plaintiff] must establish that [Defendants] used improper means to interfere with [his] ability to enforce" the judgment. *New Falls Corp. v. Soni Holdings, LLC*, No. 2:19-cv-00449 (ADS)(AKT),

28

2020 WL 13850728, at *7 (E.D.N.Y. Mar. 31, 2020) (citing *Siegel*, 2017 WL 9482101, at *10).

Defendants assert that, to sustain a claim, Plaintiff must allege that the Defendants engaged in "improper conduct" that is independently tortious or criminal. (Reply at 5.) Upon review of binding New York law, the Court disagrees that Plaintiff must allege conduct rising to the level of independently tortious or criminal.

In *NBT Bancorp Inc. v. Fleet/Norstar Financial Grp. Inc.*, the New York Court of Appeals made clear that "the degree of protection available to a plaintiff" in a tortious interference claim is "defined by the nature of the plaintiff's enforceable legal rights." 664 N.E.2d 492, 495-96 (N.Y. 1996). To be specific, "where there is an existing, enforceable contract and a defendant's deliberate interference results in a breach of that contract, a plaintiff may recover damages for tortious interference with contractual relations even if the defendant was engaged in lawful behavior." *Id.* at 496. On the other hand, "[w]here there has been no breach of an existing contract, but only interference with prospective contract rights . . . plaintiff must show more culpable conduct on the part of the defendant[.]" *Id.* In making such a distinction, the Court of Appeals noted the important balance struck between "society's interest in respect for the integrity of contractual relationships, on the one hand, and, on the other, the

right to freedom of action on the part of the party interfering and society's concern that competition not be unduly hampered." *Id.* (citing *Guard-Life v. S. Parker Hardware Mfg. Corp.*, 406 N.E.2d 445, 448 (N.Y. 1980)).

Here, Plaintiff alleges that Defendants tortiously interfered with the enforcement of two judgments of confession by the Judgment Debtors. (Am. Compl. ¶¶ 40-53.) These judgments are no less binding than any other contract and are also imbued with the additional authority of the court. Thus, Plaintiff possesses legal rights akin to a plaintiff asserting a tortious interference claim with contract, as opposed to a plaintiff asserting a tortious interference claim with prospective contractual relations, and Plaintiff need not allege independently tortious or criminal conduct to state a claim for tortious interference with enforcement of a judgment.

As discussed more thoroughly above, Plaintiff has adequately alleged that Defendants' conduct – even if lawful – tortiously interfered with Plaintiff's collection of his judgments. Plaintiff alleges that, Defendants, with full knowledge of Plaintiff's attempts to collect from the Judgment Debtors, entered into an agreement with Kasowitz to pay Fischman's legal fees, thereby helping Fischman conceal his assets from collection. (Am. Compl. ¶¶ 30, 46, 49.) Defendant Sy Marcus admitted to knowing about the outstanding judgments during his in-person meeting with

Plaintiff.  (*Id.* ¶ 36.)    In exchange, Defendants and their entities received Fischman's Ultimax stock, upon which Plaintiff would have otherwise been able to levy and execute.  (*Id.* ¶¶ 30, 45.)  Defendant Ellen Marcus, Sy Marcus' wife, made the payments to Kasowitz herself from their "house account."  (*Id.* ¶ 35.)  Thus, Plaintiff has stated a claim with respect to Count One.

## 2.   "But For" Causation of Plaintiff's Injuries

Defendants argue that Plaintiff fails to allege that Defendants' actions were the "but for" cause of Plaintiff's injuries (i.e., his inability to levy and collect on his judgments).  The Court disagrees.

Fischman's Ultimax shares are personal property subject to execution in satisfaction of Plaintiff's judgment.  *See* C.P.L.R. § 5232(a); *Gallant v. Kanterman*, 249 A.D.2d 59, 62 (1st Dep't. 1998) (finding stock certificates "available pursuant to CPLR 5232(b) to be levied upon by seizure and sold[.]");  (Am. Compl. ¶ 22.)  Despite issuing subpoenas and writs, Plaintiff was unable to locate, restrain and levy on Fischman's Ultimax shares.  (*Id.*)  Plaintiff further alleges that, were it not for Defendant Sy Marcus' agreement with Kasowitz, Fischman would have had to liquidate his Ultimax stock for cash and deposit the funds into bank accounts subject to restraining notices.  (*Id.* ¶¶ 25, 36.)  Instead, Defendants paid Kasowitz for services to Fischman, who avoided depositing funds into his restrained accounts.  In other

31

words, without Defendants' assistance, Fischman's Ultimax shares would have been converted to cash and deposited into a bank account subject to Plaintiff's restraining notices even if Plaintiff could not execute on the shares directly. (*Id.* ¶ 25.) These allegations are sufficient to show but-for causation at the motion to dismiss stage.

### D.    Count Two – Aiding and Abetting Fraudulent Conveyance and Conspiracy to Defraud

Defendants argue that Count Two in the Amended Complaint should be dismissed. (Mot. at 17-18.) Though pleaded as a single count, the Court will separately discuss Plaintiff's aiding and abetting fraudulent conveyance claim and Plaintiff's conspiracy to defraud claim.

#### 1.    Aiding and Abetting Fraudulent Conveyance

Defendants argue that Plaintiff has failed to allege an underlying fraudulent conveyance for which aiding and abetting liability would attach. (Mot. at 17-18.) On reply, Defendants raise for the first time that (1) Plaintiff's claim for aiding and abetting fraudulent conveyance is "not cognizable upon New York law," and (2) Plaintiff has not met the heightened pleading requirements for fraud under Federal Rule of Civil Procedure 9(b). (Reply at 9-12.) The Court agrees that, as pled, Plaintiff's aiding and abetting claim must be dismissed.

As a preliminary matter, the Court notes that it has "wide

discretion" on whether to consider arguments made for the first time on reply. *See, e.g.*, *Watson v. Geithner*, 355 F. App'x 482, 483 (2d Cir. 2009) (summary order) (court may decline to consider an argument raised for the first time in a reply brief); *Compania Del Bajo Caroni (Caromin), C.A. v. Bolivarian Republic of Venezuela*, 341 F. App'x 722, 724 (2d Cir. 2009) (citations omitted) (finding "[a] district court enjoys broad discretion . . . to consider arguments made for the first time in a reply brief[.]"). As Plaintiff has neither objected nor sought to file a sur-reply, and in the interests of thoroughness, the Court will address all of Defendants' arguments in turn.

Under a generous reading of the Amended Complaint, Plaintiff appears to allege two fraudulent conveyances where aiding and abetting liability may arise. First, Plaintiff appears to allege certain fraudulent conveyances where Fischman's wife, Nina Fischman, was the transferee of Fischman's executive compensation and Cardis' receipts. (Am. Compl. ¶¶ 14, 15; Opp. at 20.) Second, Plaintiff also alleges that, as a result of Defendants' scheme with Fischman, Sy Marcus received Ultimax stock and/or a portion of Fischman's ownership interest in Ultimax. (*Id.* ¶¶ 56, 59.) In other words, Sy Marcus was the transferee or beneficiary of the allegedly fraudulent conveyances from Fischman to Defendants. (*See id.* ¶¶ 44, 45.)

###### a.  Conveyances from Aaron Fischman to Nina Fischman

The Court first addresses Defendants' argument that Plaintiff's claim of aiding and abetting fraudulent conveyance is not cognizable under New York law where Defendants are neither the transferees nor beneficiaries of the conveyance.  (Reply at 11.) The Court agrees that an aiding and abetting claim may not be sustained "against parties who merely participated in the transfer but did not benefit from it."  *Amusement Indus., Inc. v. Midland Ave. Assocs., LLC*, 820 F. Supp. 2d 510, 527 (S.D.N.Y. 2011).  New York courts have consistently found that there is "no cause of action for aiding and abetting a fraudulent conveyance against a person . . . who is alleged merely to have assisted in effecting the transfer . . . and who is not alleged to have been a transferee . . . or to have benefitted from the transaction."  *BBCN Bank v. 12th Avenue Restaurant Grp. Inc.*, 150 A.D.3d 623 (1st Dep't. 2017) (collecting cases).  "[U]nder the existing fraudulent conveyance statutes, the only possible claim for relief in such a circumstance would be a claim against 'transferees of the assets []or beneficiaries of the conveyance."  *Amusement Indus., Inc.*, 820 F. Supp. 2d at 533 (citing *Fed. Deposit Ins. Co. v. Porco*, 552 N.E.2d 158 (N.Y. 1990)).  Thus, Plaintiff's aiding and abetting claim for transfers made to Nina Fischman, where Defendants were neither the transferee nor beneficiary, fails as a matter of law and is

34

dismissed.[6]

### b.    Conveyances from Aaron Fischman to Sy Marcus

As for Plaintiff's aiding and abetting claim for Fischman's transfers of his interests in Ultimax stock to Sy Marcus, the main issue here – as Defendants appear to concede – is that Plaintiff has incorrectly alleged aiding and abetting liability when he should have simply brought a direct claim of fraudulent conveyance. (*See* Reply at 10 (noting that "the appropriate relief – if any – would be to void the conveyance of the Ultimax stock"); Reply at 13 (Defendants "believe that any claim to recover the stock would have to be brought directly against Sy in a fraudulent conveyance action . . .").)

Plaintiff alleged that Defendant Sy Marcus was the transferee of Fischman's Ultimax common stock. (Am. Compl. ¶ 55.) Though "[t]ransferors cannot be sued for a fraudulent conveyance claim, and thus someone who has aided and abetted the transferor could not logically be sued either if they had no other role in the transaction[,]" transferees clearly may be sued for fraudulent conveyance. *Amusement Indus. Inc.*, 820 F. Supp. 2d at 532-33. "[I]n such an instance, there is no need to resort to a claim of 'aiding and abetting.' Instead, such a defendant may be sued

---

[6] Plaintiff has also not alleged that Defendants assisted or even "merely participated" in the transfer of Fischman's assets to Nina Fischman. The Amended Complaint suggests instead that those transfers were facilitated by Lawrence Katz, an attorney for Cardis. (Am. Compl. ¶ 14.)

directly for the fraudulent conveyance[.]"  *Id.* at 533.[7] Plaintiff, however, has not brought a direct fraudulent conveyance claim against Defendant Sy Marcus, and his claim as pleaded must be dismissed.

### 2.  Conspiracy to Defraud

As to the second claim in Count Two, Defendants argue that Plaintiff "failed to allege with specificity a tortious act based on a common agreement and overt action taken in furtherance of such alleged conspiracy." (Mot. at 17–18.)  On reply, Defendants argue that Plaintiff's claim for aiding and abetting conspiracy to defraud is also "not an independent cause of action under New York law." (Reply at 12.)  Plaintiff does not respond or otherwise address these arguments in his opposition brief.

As Defendants correctly assert, there is no independent cause of action for civil conspiracy to defraud under New York law.  *See Filler v. Hanvit Bank*, 156 F. Appx. 413, 417 (2d Cir. 2005). However, a civil conspiracy may be alleged for the purpose of

---

[7] Defendants also appear to argue that Plaintiff may not seek monetary damages through a fraudulent conveyance claim. (Reply at 10.)  The Court disagrees.  "Generally, the creditor's remedy in a fraudulent conveyance action is limited to reaching the property which would have been available to satisfy the judgment had there been no conveyance."  *Cap. Distributions Servs., Ltd., v. Ducor Exp. Airlines, Inc.*, 440 F. Supp. 2d 195, 204 (E.D.N.Y. 2006).  "However, where the assets fraudulently transferred no longer exist or are no longer in the possession of the transferee, a money judgment may be entered against the transferee in an amount up to the value of the fraudulently transferred assets."  *Id.; accord Mfrs. & Traders Trust Co. v. Lauer's Furniture Acquisition, Inc.*, 226 A.D.2d 1056, 1057 (4th Dep't. 1996) ("money judgment was properly granted" where asserts were "sold and commingled").

showing that an otherwise actionable tort was committed jointly by the conspirators and that, because of the conspirators' common purpose and interests, the acts of one may be imputed to the others. *Id.*; *Grove Press, Inc. v. Angleton*, 649 F.2d 121, 123 (2d Cir. 1981) ("The allegation [of conspiracy] 'is merely the string whereby the plaintiff seeks to tie together those who, acting in concert, may be held responsible in damages for any overt act or acts.'") (quoting *Rutkin v. Reinfeld*, 229 F.2d 248, 252 (2d Cir. 1956)).

Thus, to establish a sufficient claim for conspiracy to defraud, a plaintiff must first allege facts demonstrating the underlying fraud, although the plaintiff need not prove that each defendant committed every element of the underlying fraud. *Meisel v. Grunberg*, 651 F. Supp. 2d 98, 119 (S.D.N.Y. 2009) (citing *Snyder v. Puente De Brooklyn Realty Corp.*, 297 A.D.2d 432, 435 (N.Y. 2002)). In addition, a plaintiff must allege plausible facts of (1) a corrupt agreement; (2) an overt act in furtherance of that agreement; and (3) membership in the conspiracy by each defendant. *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 240 (2d Cir. 1999). "As is true in criminal conspiracies, agreements in civil conspiracies will not easily be shown by direct evidence, but may be inferred from circumstantial evidence." *Id.*

Plaintiff has sufficiently and plausibly alleged a conspiracy to defraud. As a preliminary matter, the Court notes that

37

Plaintiff only asserts this claim against defendant Sy Marcus. The underlying fraud that Plaintiff alleges is that Sy Marcus knowingly schemed with Fischman to conceal and transfer Fischman's assets, thereby placing them out of Plaintiff's reach. In furtherance of that scheme, Plaintiff alleged that Sy Marcus and Fischman, with knowledge of Plaintiff's underlying judgments, entered into an agreement with Kasowitz, where Sy Marcus agreed to pay Fischman's legal fees. (Am. Compl. ¶¶ 9, 30.) As consideration for undertaking those payments, Plaintiff alleges that Sy Marcus received Fischman's valuable Ultimax common stock. (*Id.* ¶ 30.) Defendants then made several wire transfers directly to Kasowitz, in furtherance of their agreement with Fischman, thereby permitting Fischman to continue to enjoy Kasowitz's legal services without placing assets within Plaintiff's reach. (*Id.* ¶ 35.) Additionally, Defendants proceeded to wire money for Fischman's benefit through other channels, including to IOLA accounts for Fischman's other attorneys. (*Id.* ¶ 37.) Plaintiff's allegations against Sy Marcus are sufficient and plausibly alleged at this stage in the litigation. Thus, Defendants' motion to dismiss Plaintiff's conspiracy to defraud claim is denied.

### 3.   Leave to Replead

In light of the Federal Rules of Civil Procedure's general deemphasis on the form of the pleadings in favor of trying a case on its merits, Plaintiff is granted leave to amend his complaint

38

to assert a direct fraudulent conveyance claim.

Pursuant to Federal Rule of Civil Procedure 15(a), "leave (to replead) shall be freely given when justice so requires[.]" Here, Plaintiff has not requested leave to amend any of his claims. "[A] district court has no duty to instruct plaintiffs that they may move to amend their complaint and, at least in counseled cases, cannot abuse its discretion by failing to *sua sponte* grant leave to amend." *Oparaji v. City of N.Y.*, 152 F.3d 920 (2d Cir. 1998) (summary order) (citing *In re Am. Express Co. S'holder Litig.*, 39 F. 3d 395, 401 (2d Cir. 1994)).

Nevertheless, the Court may *sua sponte* grant leave to replead. *See Straker v. Metropolitan Travel Auth.*, 333 F. Supp. 2d 91, 102 (E.D.N.Y. 2004). The Court's discretion is "broad[,]" and "its exercise depends upon many factors, including undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Local 802, Assoc. Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998).

As discussed above, Plaintiff has alleged facts that may sustain a fraudulent conveyance claim against Sy Marcus and the entities which received Fischman's Ultimax shares. Defendants have ample notice of this claim. First, Plaintiff's Amended

39

Complaint cites the statutory provision for a direct fraudulent conveyance claim, New York Debtor & Creditor Law § 273(a)(1), despite fashioning the claim as aiding and abetting a fraudulent conveyance. (Am. Compl. ¶¶ 58, 59.) Second, Defendants have moved to dismiss this claim on their own initiative in their motion to dismiss briefing. (*See* Reply at 10, 13.) Considering all the circumstances, the Court, in the exercise of its discretion, grants Plaintiff leave to amend his fraudulent conveyance claims.

## IV. Defendants' Motion for Judgment on the Pleadings

As the Court has fully addressed Defendants' motion to dismiss under Rule 12(b)(6), the Court need not reach Defendants' motion in the alternative for judgment on the pleadings. *See Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998) (stating that "[t]he test for evaluating a 12(c) motion is the same as that applicable to a motion to dismiss under [Rule 12(b)(6)].").

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2) is **DENIED**. Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is **DENIED** as to Count One, and **GRANTED** in part as to Count Two. To the extent Plaintiff asserts claims of aiding and abetting fraudulent conveyance, those claims are hereby **DISMISSED**. If Plaintiff intends to amend his complaint to

replead his fraudulent conveyance claims, he is directed to do so within thirty (30) days of this Memorandum and Order.

In light of this Memorandum & Order, the parties are also referred to Magistrate Judge Lindsey for supervision of discovery and pre-trial issues as appropriate.

**So ordered.**

Dated:     March 4, 2025
           Brooklyn, New York      _____
                                   **Kiyo A. Matsumoto**
                                   United States District Judge
                                   Eastern District of New York